UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANNY FERREIRA,
     Plaintiff,

     v.                                   CIVIL ACTION NO.
                                          13-12863-IT
MICHAEL CORSINI, NELSON JULIUS,
GREG HYDE and JUSTIN PRARIO,
     Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**
**(DOCKET ENTRY # 26)**
**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO AMEND**
**THE COMPLAINT**
**(DOCKET ENTRY # 28)**

**August 11, 2016**

**BOWLER, U.S.M.J.**

This case arises out of an alleged sexual assault on pro se plaintiff Danny Ferreira ("plaintiff") that took place on November 6, 2010 at the Massachusetts Department of Correction Treatment Center ("the Center") in Bridgewater, Massachusetts. (Docket Entry # 10). Pending before this court is a motion to dismiss filed by defendants Michael Corsini ("Corsini"), Nelson Julius ("Julius"), Greg Hyde ("Hyde") and Justin Prario ("Prario") under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry # 26).

Corsini, Julius, and Hyde seek to dismiss an amended complaint ("the complaint") based on lack of service of process.

(Docket Entry # 26, p. 23).  In opposing the motion to dismiss, plaintiff moves for an order of default under Mass.R.Civ.P. 55 ("Rule 55").  (Docket Entry # 17).

In addition to seeking dismissal based on insufficient service, Corsini, Julius, Hyde and Prario ("defendants") move to dismiss an Eighth Amendment claim alleging a violation of 42 U.S.C. § 1983 ("section 1983") grounded upon defendants' failure to protect plaintiff from the sexual assault and an equal protection claim alleging a section 1983 violation under Rule 12(b)(6).  (Docket Entry # 26).  They also seek qualified immunity on the Eighth Amendment claim.  (Docket Entry # 26).

In seeking dismissal under Rule 12(b)(6) defendants argue: (1) the Eighth Amendment claim against Prario fails because he was not involved in the assault until being informed of the events on November 15, 2010 and the complaint fails to include any facts indicating that Prario knew or should have known of the threat of a sexual assault by Shawn Milliken ("Milliken"), an inmate at the Center, against plaintiff and, accordingly, there is an absence of facts to support the necessary element of deliberate indifference; (2) there is no supervisory liability on the part of Corsini and Julius based on the Eighth Amendment violation because they were not the primary violators or direct participants in the incident and had no knowledge of any substantial risk of harm to plaintiff; (3) there is no liability

2

on the part of defendants based on a failure to train given the absence of facts in the complaint relative to training; and (4) defendants are entitled to qualified immunity on the Eighth Amendment claim because the law was clearly established that their conduct did not violate the Eighth Amendment.  (Docket Entry # 26).  In addition, defendants argue that any section 1983 claim based on a violation of equal protection regarding the decision to transfer plaintiff to North Central Correctional Institute ("NCCI") in Gardner, Massachusetts is subject to dismissal because it is conclusory and plaintiff is not a member of a suspect class.  (Docket Entry # 26).

After defendants moved to dismiss the complaint, plaintiff moved to amend the complaint.  (Docket Entry # 28).  The proposed amended complaint ("amended complaint") is based on the same incident but adds additional facts; alters the prayer for relief; omits references to various statutes set out in the introductory paragraph of the complaint; reduces the causes of action to two section 1983 claims based on a failure to protect and a common law negligence claim; and removes a number of defendants named in the complaint, including Prario.  (Docket Entry # 28).  Corsini, Julius and Hyde, the named defendants in the amended complaint, oppose the motion to amend on the basis of futility and undue delay.  (Docket Entry # 30).

3

The complaint raises a claim of deliberate indifference to the substantial risk of an inmate-to-inmate assault and a failure to intervene to protect plaintiff's safety under the Due Process Clause of the Fourteenth Amendment in violation of section 1983. (Docket Entry # 10, pp. 18, 19). It also raises a section 1983 claim based on the Equal Protection Clause. (Docket Entry # 10, p. 19). In addition, the complaint alleges violations of 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 1985 ("section 1985"); 18 U.S.C. § 241 ("section 241"); section 37 of Massachusetts General Laws chapter 265 ("section 37"); section one of Massachusetts General Laws chapter 231A ("section one"); and the "Civil Rights of Institutional Person Act of 1980." (Docket Entry # 10).[1]

In opposing the motion to amend, Corsini, Julius and Hyde argue that, for reasons set out in defendants' motion to dismiss related to service, the statute of limitations and the failure to protect claim, the amended complaint is futile. (Docket Entry # 30, pp. 2, 3). They also submit that the official

---

[1]  While the alleged section 1983 violations are addressed in the motion to dismiss, the alleged violations of section 1981, section 1985, section 241, section 37, section one and the "Civil Rights of Institutional Person Act of 1980" are not addressed in the motion to dismiss. (Docket Entry # 26). In any event, an amended complaint supersedes a prior complaint, see Evergreen Partnering Group, Inc. v. Pactiv Corp., 720 F.3d 33, 40 n.2 (1st Cir. 2013), and the amended complaint omits these extraneous statutory references.

capacity claims against them are futile.  (Docket Entry # 30, p.
2).  In addition to futility, Corsini, Julius and Hyde oppose
the amendment as untimely.  (Docket Entry # 30, p. 1).

Both the complaint and the amended complaint state that
plaintiff is a prisoner civilly committed to the custody of the
Massachusetts Department of Correction ("DOC").  (Docket Entry
## 10, 28-1).  The complaint states that at all relevant times,
plaintiff was under the care and custody of the Superintendent
of the Center.  (Docket Entry # 10, p. 3).

Corsini was Superintendent of the Center.  (Docket Entry ##
10, 28-1).  Julius was the Director of Security for the Center.
(Docket Entry ## 10, 28-1).  Hyde was a correctional officer at
the Center.  (Docket Entry ## 10, 28-1).  Prario was a
correctional officer of the Inner Perimeter Security Team
("IPS") at the Center.  (Docket Entry # 10, p. 4).  Each
defendant is being sued in his official and individual
capacities in the complaint.  (Docket Entry # 10, pp. 3-5).

I.  Motion to Dismiss the Complaint (Docket Entry # 26)

Defendants first seek to dismiss the complaint as to
Corsini, Julius and Hyde based on insufficient service.  The
facts pertaining to service begin with plaintiff's attempt to
serve defendants with the complaint.  On November 25, 2014, this
court directed the U.S. Marshal to serve a copy of the complaint

as directed by plaintiff on defendants within 120 days. (Docket
Entry # 12). Service was attempted on each defendant on May 1,
2015 at the Center. (Docket Entry # 15). On May 1, 2015 at
11:00 a.m., service was attempted on Corsini at the Center.
(Docket Entry # 15, p. 1). As stated in the return of service,
the U.S. Marshal attempting service noted that Corsini "was no
longer at this facility." (Docket Entry # 15, p. 1). On May 1,
2015 at 11:00 a.m., service was attempted on Julius at the
Center. (Docket Entry # 15, p. 1). As also stated in the
return of service as to Julius, the U.S. Marshal attempting
service noted that Julius "was no longer at institution."
(Docket Entry # 15, p. 3). On May 1, 2015 at 11:00 a.m.,
service was attempted on Hyde at the Center. (Docket Entry #
15, p. 5). As reflected in the return of service as to Hyde,
the U.S. Marshal attempting service remarked that Hyde "was no
longer at facility." (Docket Entry # 15, p. 5). On May 1, 2015
at 11:00 a.m., service was successfully effectuated on Prario at
the Center. (Docket Entry # 15, p. 7).

On November 4, 2015, plaintiff moved for an order of
default against defendants due to their failure to answer or
plead a defense. (Docket Entry # 17). According to plaintiff's
affidavit attached to the motion for default, the U.S. Marshal's
office served the summons and complaint on defendants. (Docket
Entry # 17-1, p. 5).

After plaintiff moved for order of default, Corsini, Julius and Hyde entered a limited appearance for the purpose of asserting the defense of failure to make proper service. (Docket Entry # 18).  Prario moved for an extension of time to file a response to plaintiff's motion for order of default, which was granted.  (Docket Entry # 20).  Prario then filed an opposition to the motion for entry of default.  (Docket Entry # 24).  Finally, in response to the motion to amend, Corsini, Julius and Hyde filed an opposition objecting to the amendment because of the continued failure to serve them with the amended complaint.  (Docket Entry # 30).

## DISCUSSION

In order to "exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987); see Vázquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014) ("jurisdiction normally depends on legally sufficient service of process") (citing Omni Capital, 484 U.S. at 104); United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) ("service of process constitutes the vehicle by which the court obtains jurisdiction").

The burden of proof to establish proper service in accordance with Fed.R.Civ.P. 4 ("Rule 4") is upon the plaintiff.

7

<u>Vásquez-Robles v. CommoLoCo, Inc.</u>, 757 F.3d at 4 ("when a
defendant seasonably challenges the adequacy of service, the
plaintiff has the burden of showing that service was proper");
<u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600,
612 n.28 (1979) ("party claiming that the court has power to
grant relief on his behalf has the burden of persuasion on the
jurisdiction issue"); <u>Lensel Lopez v. Cordero</u>, 659 F.Supp. 889,
890 (D.P.R. 1987) (the plaintiff has burden of establishing
validity of service).  Absent proof of service of process, a
federal court lacks jurisdiction to render judgment against a
defendant.  <u>See</u> <u>James v. United States</u>, 709 F.Supp. 257, 259
(D.D.C. 1989).

    In order to discharge the burden, it is not enough for
plaintiff to rely on conclusory statements.  <u>See</u> <u>Sikhs for
Justice v. Nath</u>, 850 F.Supp.2d 435, 440 (S.D.N.Y. 2012).
Rather, plaintiff must come forward with affidavits or other
proof showing that proper service was made.  <u>Id.</u>  (Docket Entry
# 17-1).  In light of the returns of service evidencing service
was not made on Corsini, Julius and Hyde, plaintiff's conclusory
statement in his affidavit does not discharge his burden to
establish proper service of the complaint as to these
defendants.[2]

---

[2]   Plaintiff admits in his motion to waive service that he was
informed by the U.S. Marshal's office that not all defendants

At the time plaintiff attempted to serve these defendants with the complaint, Rule 4(m) required that service of a summons and complaint be made upon a defendant within 120 days of filing the complaint.  Rule 4(m) currently requires service within 90 days of filing a complaint.  Accordingly, a 90 day time period applies to service of the amended complaint.  If service is not made within the 120 day (now 90 day) time period, the court "shall dismiss the action without prejudice as to that defendant."  Fed.R.Civ.P 4(m).  A plaintiff, upon a showing of good cause for the failure, however, can request that the court extend the time for service.  Fed.R.Civ.P 4(m).  The purpose of Rule 4(m) and its predecessor Rule 4(j) is "to compel parties and their counsel to be diligent in prosecuting causes of action."  United States v. Ayer, 857 F.2d 881, 884 (1st Cir. 1988).  In order to preserve the necessity of service and ensure a defendant receives formal notification of a lawsuit, Rule 4(m) provides the sanction of dismissal unless service is perfected within 120 days.  See id.  The plain language of the rule requires the plaintiff to be diligent in perfecting service. Courts have allowed Rule 4 motions to dismiss even where the statute of limitations would bar the plaintiff from refiling.

---

were served, which contradicts his affidavit attached to the
motion for default.  (Docket Entry ## 17-1, 31).

See In re City of Phila. Litigation, 123 F.R.D. 515, 520 (E.D.Pa. 1988).

Here, the original complaint was filed on November 4, 2013, giving plaintiff until March 4, 2014 to serve defendants. (Docket Entry # 1). Plaintiff did not attempt to serve defendants through the U.S. Marshal until after this time period expired. (Docket Entry # 15). In addition, this court extended that period by an additional 120 days in the November 25, 2014 Order, giving plaintiff until March 25, 2015 to serve defendants. (Docket Entry # 12). Service was not attempted on defendants until May 1, 2015. (Docket Entry # 15).

The November 25, 2014 Order which allowed a 120 day extension has passed and Corsini, Julius and Hyde remain unserved. Furthermore, plaintiff did not seek an additional extension of time based on good cause before the 120 day extension expired to serve Corsini, Julius and Hyde. (Docket Entry # 26, p. 8). Plaintiff's failure to attempt service a second time through the U.S. Marshal after the expiration of the second 120 day time period bespeaks a lack of diligence. Thus, even considering the expiration of the three year limitations period, which is discussed below, as well as other relevant factors, a dismissal of the complaint as to Corsini, Julius and Hyde for lack of service is appropriate.

Plaintiff also argues that Corsini, Julius and Hyde have waived service. (Docket Entry # 31). There are a number of ways in which a defendant can waive service. Although a waiver of service may avoid dismissal, Corsini, Julius and Hyde did not waive the defense of insufficient service. (Docket Entry # 18).

First, under Fed.R.Civ.P. 12 ("Rule 12"), defenses of insufficiency of process and insufficiency of service of process are waived if omitted from the party's first responsive pleading. See Fed.R.Civ.P. 12(g)-(h). Counsel for Corsini, Julius and Hyde, however, entered a limited appearance expressly for the purpose of preserving the defense of a failure to make proper service. (Docket Entry # 18). In addition, Corsini, Julius and Hyde again raised the defense of improper service in the motion to dismiss. (Docket Entry # 26, p. 7, 8).

Second, waiver can be inferred where the defendant, having actual knowledge of the lawsuit, participates in or encourages the proceedings. See Precision Etchings & Findings v. LPG Gem, Ltd., 953 F.2d 21, 25 (1st Cir. 1992) (citing United States Use of Combustion Systems Sales, Inc. v. Eastern Metal Products & Fabricators, Inc., 112 F.R.D. 685, 687 (M.D.N.C. 1986)). Actual notice of a lawsuit, without more, does not constitute a waiver and is not a substitute for proper service of process. See id. at 24 (actual knowledge does not constitute waiver of service). Plaintiff's argument that defendants waived service because they

knew about the lawsuit therefore fails.  (Docket Entry # 31, p. 1).

The standard used to determine if a defendant has waived service by inference is whether the defendant has by a decisive act unequivocally shown an intent to submit to the court's jurisdiction.  See Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1559 (1st Cir. 1989); accord Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 997 (1st Cir. 1983) (conduct was sufficiently dilatory and inconsistent to an assertion of lack of personal jurisdiction to constitute waiver).  Where "proof of a waiver rests on one's acts, 'his act[s] . . . should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.'"  Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d at 1560 (quoting Bechtel v. Liberty National Bank, 534 F.2d 1335, 1340 (9th Cir. 1976)).

Here, the facts exhibit the opposite as Corsini, Julius and Hyde have objected to service.  (Docket Entry # 18).  Moreover, the level of a defendant's participation in cases where waiver was found is not present in this case.  (Docket Entry ## 16, 24); see, e.g., Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d at 1559 (filing motion in independent proceeding did not constitute waiver of defects in service); Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., 811 F.2d 278, 280 (5th Cir. 1987)

12

(finding waiver where attorney attended pretrial conference, negotiated toward settlement, filed motion to withdraw and accepted service for a motion for continuance as well as subpoenas); Marcial Ucin, 723 F.2d at 995-97 (finding waiver where attorney filed an appearance, attended 13 depositions and did not move to dismiss until four years after filing lawsuit); J. Slotnik Co. v. Clemco Indus., 127 F.R.D. 435, 441 (D.Mass. 1989) (finding no waiver where counsel filed general appearance and motion to enlarge).

In the cases cited above, the defendant's participation was extensive and related directly to the plaintiff's individual claims. As previously mentioned, Corsini, Julius and Hyde entered a limited appearance for the purpose of asserting the defense of insufficient service of process. (Docket Entry # 18). In addition, Corsini, Julius and Hyde later explicitly acknowledged that they were not waiving their defense of insufficient service by joining in Prario's opposition to plaintiff's motion for default. (Docket Entry # 24, p. 2, n. 1). Accordingly, Corsini, Julius and Hyde have not waived service of the complaint. (Docket Entry ## 16, 24). Defendants' argument to dismiss the complaint as to Corsini, Julius and Hyde for lack of service is therefore well taken.

Corsini, Julius and Hyde's contention that the motion to amend is subject to denial because of insufficient service of

process, however, is not well taken.  The 90 day time period to serve the amended complaint has not run.  Thus, in the event this court allows amendment, plaintiff will have 90 days to effectuate service.

Because dismissal of the complaint as to Corsini, Julius and Hyde is appropriate, this court need not address the arguments to dismiss that complaint with respect to the Eighth Amendment claim, supervisory liability claim, failure to train claim and equal protection claim as to those three defendants. It is also well settled that an amended complaint supersedes the prior complaint.  See Evergreen Partnering Group, Inc. v. Pactiv Corp., 720 F.3d at 40 n.2.  Prario is not named as a defendant in the amended complaint.  It is therefore appropriate to examine the merits of the motion to amend before, if necessary, examining the remaining arguments in the motion to dismiss the complaint as to Prario.

II.  Motion to Amend (Docket Entry # 28)

The amended complaint drops Prario as a defendant but retains Corsini, Julius and Hyde as defendants in their official and individual capacities.  (Docket Entry # 28-1, p. 2). Corsini, Julius and Hyde oppose amendment on the bases of futility as well as the untimeliness of the filing of the amended complaint.  For reasons stated in defendants' motion to

14

dismiss, Corsini, Julius and Hyde argue that the amended complaint is futile because plaintiff has not corrected the deficiencies related to the statute of limitations and the failure to protect claim. (Docket Entry # 30). They also submit that the section 1983 claims against them in their official capacity are futile. (Docket Entry # 30).

## FACTUAL BACKGROUND

The amended complaint sets out the following facts. (Docket Entry # 28-1). In January 2008, plaintiff pled guilty to two counts of statutory rape and was sentenced to four to six years in prison. (Docket Entry # 28-1, p. 3). After being sentenced, plaintiff was sent to the Center to participate in sex offender treatment. (Docket Entry # 28-1, p. 3).

In October 2010, after plaintiff served his prison sentence at the Center, he was transferred to the civil side of the Center because the Commonwealth successfully petitioned to civilly commit him as a sexually dangerous person.[3] (Docket Entry # 28-1, p. 3). In the civil side of the Center, housing officers did not inform plaintiff or other inmates to stay out of other inmate's cells. (Docket Entry # 28-1, p. 3). As a

---

[3] The Due Process Clause rather than the Eighth Amendment thus provides the basis for the section 1983 failure to protect claims.

result, plaintiff would regularly spend time in the cell of Milliken as well as the cells of other inmates.  (Docket Entry # 28-1, p. 4).

The amended complaint sets out the following facts with respect to the sexual assault which occurred on November 6, 2010.  (Docket Entry # 28-1).  On November, 6, 2010, plaintiff and Milliken were alone in Milliken's cell watching television.  (Docket Entry # 28-1).  While watching television, Milliken stated to plaintiff "'let me suck your d***.'"  (Docket Entry # 28-1, p. 4).  After plaintiff refused this request, Milliken forced his hands up plaintiff's shorts, grabbed plaintiff's penis and stated "'you know you want it.'"  (Docket Entry # 28-1, p. 4).  Plaintiff then forced Milliken's hand away and attempted to leave the cell but was prevented from doing so as Milliken pushed plaintiff against the frame of the bed.  (Docket Entry # 28-1, p. 4).  Milliken proceeded to insert his right thumb into plaintiff's rectum.  (Docket Entry # 28-1, p. 4).  At that point, plaintiff resisted and, after approximately one minute, Milliken stopped the assault.  (Docket Entry # 28-1, p. 4).  Before plaintiff left the cell, Milliken threatened to assault plaintiff with a lock placed in a sock if plaintiff informed any staff member about the incident.  (Docket Entry # 28-1, p. 4).  Video surveillance largely corroborated these events.  (Docket Entry # 28-1, p. 14).

Immediately after the incident, plaintiff returned to his cell. (Docket Entry # 28-1, p. 4). There, plaintiff told his cellmate about the incident. (Docket Entry # 28-1, p. 4). When plaintiff's cellmate heard what had happened, the cellmate expressed to plaintiff his hatred of Milliken and that he wished to confront Milliken about the incident. (Docket Entry # 28-1, p. 4). Plaintiff, however, begged the cellmate not to confront Milliken about the incident because Milliken had threatened plaintiff and plaintiff felt weak, embarrassed and ashamed. (Docket Entry # 28-1, pp. 4, 5). After speaking with his cellmate, plaintiff remained in his cell for the next two or three days. (Docket Entry # 28-1, p. 5).

Hyde was the officer in charge on the housing unit on November 10, 2010 and was responsible for conducting daily security rounds. (Docket Entry # 28-1, p. 7). Instead of conducting daily security rounds, Hyde would play computer games, watch television and browse the internet. (Docket Entry # 28-1, pp. 7, 12).

Plaintiff, due to the sexual assault, has suffered and continues to suffer from a variety of issues including nightmares, anxiety, depression, a "fear of being in cells" and a "fear of being in isolated areas with older and bigger men." (Docket Entry # 28-1, pp. 7, 8). The sexual assault has also

17

triggered memories of plaintiff being sexually abused as a
child. (Docket Entry # 28-1, p. 11). Plaintiff has regularly
received mental healthcare as a result of the incident. (Docket
Entry # 28-1, p. 7).[4] Plaintiff has been prescribed medications
to aid in coping with the sexual assault, which include anti-
depressants, sleeping medications and anxiety medications.
(Docket Entry # 28-1, p. 7).

A.  Investigation

The incident came to light on November 15, 2010, when IPS
received information from informant 10-031 that on the night of
November 6, 2010, plaintiff was sexually assaulted by Milliken.
(Docket Entry # 28-1, p. 5). The IPS report confirmed that
plaintiff was sexually assaulted by Milliken. (Docket Entry #
28-1, p. 6). The report also confirmed that informant 10-031
stated he was sexually harassed by Milliken and, when he refused
Milliken's sexual advances, Milliken decided to target plaintiff

---

[4]  The amended complaint sets out numerous legal conclusions,
such as:  that Hyde's failure to protect plaintiff is a
violation of plaintiff's rights under the Eighth and Fourteenth
Amendments; that the failure to implement policies to protect
inmates amounted to deliberate indifference to a substantial
risk of serious harm to plaintiff and to other inmates on the
part of Corsini and Julius; that due to this deliberate
indifference of Corsini and Julius, plaintiff has suffered
serious harm; and that Corsini and Julius violated plaintiff's
rights under the Eighth and Fourteenth Amendments.  Such legal
conclusions in the complaint are not properly considered part of
the facts in summarizing the amended complaint for purposes of a
Rule 12(b)(6) motion.

instead.  (Docket Entry # 28-1, p. 6).  The report additionally
stated that informant 10-032 knew plaintiff for two and a half
years, knew that plaintiff was not gay and was told by Milliken
that Milliken was going to make sexual advances toward
plaintiff.  (Docket Entry # 28-1, p. 6).  The report further
stated that informant 10-033 acknowledged that Milliken had
always wanted to be sexually involved with a "young kid" and
that informant 10-032 confirmed that Milliken was "grooming"
plaintiff for physical contact.  (Docket Entry # 28-1, pp. 6,
17).  The IPS officers issued Milliken a disciplinary report for
the incident.  (Docket Entry # 28-1, p. 6).

According to the IPS report, correctional officers
interviewed plaintiff, informant 10-031, informant 10-032,
informant 10-033 and informant 10-034 on November 15, 2010.
(Docket Entry # 28-1, pp. 15-17).  During plaintiff's interview,
plaintiff admitted to being in Milliken's cell on several
occasions on November 6, 2010.  (Docket Entry # 28-1, p. 15).
Plaintiff also described the sexual assault, which is detailed
above.  (Docket Entry # 28-1, pp. 15, 16).  Plaintiff then
stated that because Milliken had threatened to harm him if he
told any staff member about the incident, he was afraid to
report the incident.  (Docket Entry # 28-1, p. 16).  Plaintiff
added that once IPS became aware of the incident, he "decided to
cooperate with the investigation."  (Docket Entry # 28-1, p.

19

16).  Notably, during the interview, Prario advised plaintiff
"not to feel bad about what happened, Milliken had a history of
doing this."  (Docket Entry # 28-1, p. 5).

During the interview of informant 10-031, informant 10-031
indicated that plaintiff had entered Milliken's cell "on several
occasions" during the night of November 6, 2010.  (Docket Entry
# 28-1, p. 14).  Informant 10-031 also acknowledged that
Milliken attempted to solicit him for sex on prior occasions.
(Docket Entry # 28-1, p. 16).  Informant 10-033 added that he
observed plaintiff inside Milliken's cell "several times" during
the two weeks leading up to the assault.  (Docket Entry # 28-1,
p. 17).

The IPS report found that plaintiff was "out of place . . .
on three occasions" between 4:00 p.m. and 9:00 p.m. on November
6, 2010, that Milliken sexually assaulted plaintiff in the
manner described by plaintiff and that Milliken threatened to
physically harm plaintiff if plaintiff told any staff member
about the incident.  (Docket Entry # 28-1, p. 18).  The IPS
report concludes by recommending that Milliken and plaintiff be
issued an "Observation of Behavior Report," that plaintiff be
"separated by housing unit," that a "conflict package be
completed and approved" and that the case be "forwarded to the
criminal prosecution division for review."  (Docket Entry # 28-

1, p. 19).  The "Observation of Behavior Report" of Milliken

summarizes the sexual assault and notes that Milliken is being

charged with "[s]exual [a]ssault, frottage, committing a felony

. . . and disrupting the orderly running of the institution."

(Docket Entry # 28-1, p. 20).

A.  Prior Incidents

According to the amended complaint, a former Superintendent

of the Center admitted that there were 41 Prison Rape

Elimination Act ("PREA") incidents at the Center in 2007 and

2008.  (Docket Entry # 28-1, p. 8).  Furthermore, a 2009 PREA

report noted that there is a higher risk of sexual assault at

the Center than at all other DOC facilities due to the Center's

open floor plan and due to its residents being sex offenders.

(Docket Entry # 28-1, p. 9).

In November 2010, plaintiff had a conversation with another

inmate, Tony Norman ("Norman"), about the sexual assault.

(Docket Entry # 28-1, p. 5).  Norman told plaintiff not to feel

bad because Milliken had sexually assaulted other young people

in the past.  (Docket Entry # 28-1, p. 5).  Also during

November, three inmates approached plaintiff and told him that

Milliken had sexually assaulted other people in the past.

(Docket Entry # 28-1, p. 6).  They directed plaintiff to talk to

another inmate, whose name is not mentioned in the amended

complaint.  (Docket Entry # 28-1, p. 6).  Plaintiff approached
this other inmate and informed him that he had been sexually
assaulted by Milliken.  (Docket Entry # 28-1, p. 6).  This other
inmate told plaintiff that "something bad did happen to me, but
I don't want to talk about it."[5]  (Docket Entry # 28-1, p. 6).

DISCUSSION

A.  <u>Timeliness</u>

    Corsini, Julius and Hyde oppose the motion to amend on the
basis of untimeliness.  (Docket Entry # 30, p. 3).  Plaintiff
argues that his pro se status should afford him a fair
opportunity to amend.  (Docket Entry # 28, p. 2).

    Federal Rule of Civil Procedure Rule 15 ("Rule 15") allows
courts to "freely give leave [to amend] when justice so
requires."  However, "'parties seeking the benefit of . . .
[Rule 15(a)'s] liberality [must] exercise due diligence;
unseemly delay, in combination with other factors, may warrant
denial of a suggested amendment.'"  <u>Walton v. Nalco Chem. Co.</u>,
272 F.3d 13, 19 (1st Cir. 2001) (quoting <u>Quaker State Oil Ref.
Corp. v. Garrity Oil Co., Inc.</u> 844 F.2d 1510, 1517 (1st Cir.

---

[5]  The foregoing prior incidents disclosed to plaintiff by Norman
and the four inmates are not considered with respect to whether
Hyde, Corsini or Julius possessed a sufficiently culpable state
of mind under <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), because of
the lack of facts indicating their awareness or knowledge of the
incidents.

22

1989)).  Where, as here, the plaintiff is pro se, courts
"endeavor, within reasonable limits, to guard against the loss
of pro se claims due to technical defects." Rodi v. S. New Eng.
Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004).  However, when "a
considerable period of time has passed between filing of the
complaint and the motion to amend, courts have placed the burden
upon the movant to show some 'valid reason for his neglect and
delay.'" Hayes v. New Eng. Millwork Distrib., Inc., 602 F.2d
15, 19-20 (1st Cir. 1979); see also Quaker State Oil Ref. Corp.
v. Garrity Oil Co., Inc., 844 F.2d at 1517 (leave to amend may
be denied if movant's delay is unexplained or "extreme").  The
length of delay here is not extreme.  See Walton v. Nalco Chem.
Co., 272 F.3d at 19-20 (submitting motion to amend eight months
after due date prescribed in scheduling order, six months after
discovery closed and one week prior to trial constituted
inordinate delay); Hayes v. New Eng. Millwork Distrib., Inc.,
602 F.2d at 20 (finding two year delay to be extreme).
Furthermore, the motion to dismiss had not yet been acted on by
this court when plaintiff's leave to amend was filed.  Taking
into account the "totality of the circumstances . . . in light
of the pertinent balance of equitable considerations," this
court does not find the motion to amend to be untimely.  See
Quaker State Oil Ref. Corp. v. Garrity Oil Co., Inc., 844 F.2d
at 1517.

B.  Statute of Limitations

Corsini, Julius and Hyde also seek to dismiss the complaint
with respect to the alleged section 1983 violations on the basis
of the applicable statute of limitations.  (Docket Entry # 26).
Corsini, Julius and Hyde argue that because the proposed amended
complaint does not "cure any of the deficiencies related . . .
to the statute of limitations, the amendment should be denied."
(Docket Entry # 30, p. 3).  The amended complaint sets out a
failure to protect claim under the Eighth Amendment in violation
of section 1983 against Hyde in Count One and against Corsini
and Julius in Count Two.[6]

Section 1983, which provides a ''private right of action for
violations of federally protected rights,'' contains no specific
statute of limitations.  Vistamar, Inc. v. Fagundo-Fagundo, 430
F.3d 66, 69 (1ˢᵗ Cir. 2005).  Courts therefore borrow the most
appropriate state statute of limitations, typically a general
personal injury statute, as long as the statute is not
inconsistent with federal law or policy.  See Poy v. Boutselis,
352 F.3d 479, 483 (1ˢᵗ Cir. 2003); accord Wilson v. Garcia, 471
U.S. 261, 280 (1985) (section 1983 action ordinarily
characterized as personal injury action for limitation purposes).

---

[6]  Corsini, Hyde and Julius do not address the statute of
limitations with respect to Count Three, which is a negligence
claim against Hyde.

Accordingly, the governing limitations period for the
section 1983 claims in counts one and two of the amended
complaint is that provided for under Massachusetts law.  In
Massachusetts, the statute of limitations for personal injuries
is three years from the date the cause of action accrues.  Mass.
Gen. L. ch. 260, § 2A.  Section 2A of Massachusetts General Laws
chapter 260 states that the ''action shall be commenced only
within three years next after the cause of action accrues.''
Ordinarily, to commence an action means to file a complaint with
the court.  See Fed.R.Civ.P. 3; McIntosh v. Antonino, 71 F.3d 29,
36 (1st Cir. 1995).  Where appropriate, however, the mailbox rule
applies to incarcerated pro se plaintiffs.  See Houston v. Lack,
487 U.S. 266, 275 (1988); Casanova v. Dubois, 304 F.3d 75, 79 (1st
Cir. 2002).  Under the mailbox rule, ''the filing date for
purposes of assessing compliance with the statute of limitations
will be the date on which the prisoner commits the mail to the
custody of prison authorities.''  Casanova v. Dubois, 304 F.3d at
79.  The original complaint is dated October 30, 2013.  (Docket
Entry # 1, p. 16).  Accordingly, the filing date for purposes of
the statute of limitations for the original complaint is October
30, 2013.[7]

Plaintiff filed the motion to amend with the amended
complaint attached, however, on May 4, 2016, more than six years
after the November 6, 2010 sexual assault and more than three

---

[7]  The above finding is made based on the date in the complaint.
It does not preclude defendants from providing evidence later in
these proceedings to refute the application of the mailbox rule.

years after the applicable three year statute of limitations period had ended.  (Docket Entry # 28).  Rule 15(c) nevertheless allows the amended complaint to relate back to the filing of the original complaint under certain circumstances.  "'Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint.'"  <u>Coons v. Indus. Knife Co., Inc.</u>, 620 F.3d 38, 40, n.4 (1st Cir. 2010) (quoting <u>Pessotti v. Eagle Mfg. Co.</u>, 946 F.2d 974, 975 (1st Cir. 1991)).

Rule 15(c)(1)(A) expressly provides that, "An amendment of a pleading relates back to the date of the original pleading when:  relation back is permitted by the law that provides the statute of limitations applicable to the action."  Fed.R.Civ.P. 15(c)(1)(A); <u>see also</u> <u>Sigros v. Walt Disney World Co.</u>, 190 F.Supp.2d 165, 167-68 (D.Mass. 2002).  Massachusetts Rule of Civil Procedure 15(c) ("Massachusetts Rule 15(c)") states, "whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading."  Mass.R.Civ.P. 15(c).

As an alternative to the application of Massachusetts Rule 15(c) by operation of Rule 15(c)(1)(A), Rule 15(c)(1)(B) allows relation back when "the amendment asserts a claim or defense

that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B).

Applying either Massachusetts Rule 15(c) under Rule 15(c)(1)(A) or Rule 15(c)(1)(B), the result is the same. All of the section 1983 claims in the amended complaint relate back because they are based on the same conduct and the same occurrence as those in the original complaint: the sexual assault on November 6, 2010. Moreover, both Corsini, Julius and Hyde are named as defendants in the original complaint (Docket Entry # 1) and the amended complaint (Docket Entry # 28-1). The filing date of the original complaint (October 30, 2013) therefore applies and is less than three years after the November 6, 2010 assault. Thus, the section 1983 claims in counts one and two of the amended complaint are not barred on statute of limitation grounds.[8]

C.  <u>Failure to Protect Claim Against Hyde</u>

In Count One, the amended complaint alleges that Hyde failed to protect plaintiff from the sexual assault which amounted to deliberate indifference in violation of section 1983. (Docket Entry # 28-1, p. 7). Specifically, the amended

---

[8]  Likewise, the section 1983 claims in the prior complaint are not barred on statute of limitations grounds.

complaint asserts that Hyde failed to conduct his daily security
rounds and that due to Hyde's lengthy employment at the Center
and the high number of PREA incidents in 2008 and 2009 at the
Center, Hyde knew or should have known of the "substantial risk"
of sexual assault and/or violence.  (Docket Entry # 28-1, p. 7).
Corsini, Julius and Hyde oppose amendment on the basis of
futility.  (Docket Entry # 30).

"In assessing futility, the district court must apply the
standard which applies to motions to dismiss under [Rule
12(b)(6)]."  Adorno v. Crowley Towing & Transp. Co., 443 F.3d
122, 126 (1st Cir. 2006).  When considering a motion to dismiss
under Rule 12(b)(6), a court "accept[s] as true all well pleaded
facts in the complaint and draw[s] all reasonable inferences in
favor of the plaintiffs."  Gargano v. Liberty Int'l
Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  "To survive
a motion to dismiss, the complaint must allege 'a plausible
entitlement to relief.'"  Fitzgerald v. Harris, 549 F.3d 46, 52
(1st Cir. 2008).  In addition, "the plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While "detailed
factual allegations" are not required, "a plaintiff's obligation
to provide the 'grounds' of his 'entitlement for relief'
requires more than labels and conclusions, and a formulaic

28

recitation of the elements of a cause of action will not do."
Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007); see
Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).
Additionally, "a well-pleaded complaint may succeed even if . .
. actual proof of those facts is improbable."  Bell Atlantic v.
Twombly, 550 U.S. at 556.  The protections of the Eighth
Amendment against cruel and unusual punishment only attach after
a prisoner's conviction.  See Hasenfus v. LaJeunesse, 175 F.3d
68, 71 n.1 (1st Cir. 1999).  Because plaintiff is proceeding pro
se, however, this count construes the claim as alleging a
violation of the Due Process Clause of the Fourteenth Amendment.
Notably, ''although the rights of an involuntary committed person
are 'grounded in the Fourteenth Amendment's Due Process Clause,
courts have looked to the Eighth Amendment jurisprudence for
guidance.'''  Battista v. Dennehy, 2006 WL 1581528 at *7 (D.
Mass. Mar. 22, 2006); see also Burrell v. Hampshire County, 307
F.3d 1, 7 (1st Cir. 2002) (''the standard to be applied is the
same as that used in Eighth Amendment cases''); Hasenfus v.
LaJeunesse, 175 F.3d at 72 (noting ''basic due process constraint
as against behavior so extreme as to 'shock the conscience''').

     Eighth Amendment claims are analyzed under the twofold
framework laid out in Farmer v. Brennan, 511 U.S. 825, 834
(1994).  See Burrell v. Hampshire County, 307 F.3d at 7 (applying
this standard to Fourteenth Amendment due process claim).  The
first prong of the Farmer test provides that ''the deprivation
alleged must be, objectively, sufficiently serious.''  Id. at 8

(citing Farmer).  In other words, a claim based on a failure to protect requires that the prisoner be ''incarcerated under conditions posing a substantial risk of serious harm.''  Farmer v. Brennan, 511 U.S. at 834.  The ''prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'''  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Proof of a single, isolated incident of violence is ordinarily not sufficient to prove a substantial risk of harm.  See Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014); see also Martin v. White, 742 F.2d 459, 474 (8th Cir. 1984) (holding that pervasive risk of harm may not ordinarily be shown by pointing to single incident or isolated incidents).

     The second prong of the Farmer test requires that there be a showing ''that prison officials possessed a sufficiently culpable mental state of mind, namely one of 'deliberate indifference' to an inmate's health or safety.''  Burrell v. Hampshire County, 307 F.3d at 8 (citing Farmer).  This second prong, in turn, has two additional subparts.  First, courts have held ''deliberate'' to mean that a ''prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'''  Id. (citing Farmer).  Second, courts have interpreted ''indifference'' to mean that prison officials are aware of the risk and respond unreasonably to the risk.  See id. Even if prison officials are aware of a risk, they cannot be indifferent if they ''responded reasonably to the risk, even if

the harm ultimately was not avoided.'' <u>Id.</u>; <u>Farmer v. Brennan</u>, 511 U.S. at 844.

Applying the <u>Farmer</u> test and assuming the facts alleged as true and construing reasonable inferences in favor of plaintiff, there are sufficient allegations to state a claim of deliberate indifference due to a failure to protect against Hyde.  As stated in the amended complaint, plaintiff was incarcerated under conditions posing a substantial risk of serious harm:  he cites the existence of a PREA report in 2009, which stated that there is a higher risk of sexual assault at the Center than all other DOC facilities, the Center's open floor plan and because the residents of the Center were sex offenders.  (Docket Entry # 28-1, p. 9).  Plaintiff has sufficiently alleged that Hyde was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that Hyde drew that inference because Hyde's lengthy employment at the Center and the high number of PREA incidents in 2008 and 2009 should have put him on notice that a substantial risk of serious harm exists.  (Docket Entry # 28-1, p. 8); <u>see</u> <u>Giroux v. Somerset Cty.</u>, 178 F.3d 28, 32 (1st Cir. 1999) ("[w]hether a prison official had the requisite knowledge of a substantial is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence").  Plaintiff has also sufficiently alleged that Hyde responded unreasonably

to this risk, as he alleges that Hyde failed to conduct his daily security rounds.  (Docket Entry # 28-1, p. 7).

In sum, the amended complaint adequately sets out a section 1983 failure to protect deliberate indifference claim under the Due Process Clause against Hyde in his individual capacity sufficient to withstand a Rule 12(b)(6) motion to dismiss.

Corsini, Julius and Hyde correctly assert that any official capacity claim for damages against Hyde in Count One is futile. A suit against a state official acting "in his or her official capacity is the same as a suit 'against the entity of which the officer is an agent.'"  Tyler v. Massachusetts, 981 F.Supp.2d 92, 95 (D.Mass. 2013) (quoting Monell v. New York City Department of Social Services, 436 U.S. 658, 690 n.55 (1978)) (internal brackets omitted).  State officials acting in "their official capacities are not 'persons' in the meaning of section 1983, and therefore are not subject to suit in the federal courts without a State's consent."  Id. (citing Will v. Michigan Department of State Police, 491 U.S. 58, 65–67 (1989)). Accordingly, "'[N]either a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.'"  Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir. 2009) (quoting Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995)).

As a final matter, in opposing amendment on the basis of futility, Corsini, Julius and Hyde additionally submit that the amended complaint does not cure the deficiencies noted in their motion to dismiss (Docket Entry # 26) which, in turn, include a qualified immunity argument.  The qualified immunity argument asserts that, because the law discussed elsewhere in the motion to dismiss (Docket Entry # 26) "is clearly established in DOC Defendants' favor, a fortiori the law is not clearly established in plaintiff's favor, and defendants are thus shielded by qualified immunity."[9]  (Docket Entry # 26, p. 20) (citing Clancy v. McCabe, 805 N.E.2d 484, 487 (Mass. 2004) ("[b]ecause we hold that the disciplinary action taken by McCabe was not deliberately indifferent as a matter of law, and thus he is entitled to qualified immunity from suit under § 1983")).

Qualified immunity "entails a two-part inquiry."  MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014).  Under this framework, a court examines "'whether the facts that a plaintiff has alleged make out a violation of a constitutional right" and "'whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.'"  Id.  At the motion to dismiss stage, the court "consider[s]:  1) whether

---

[9]  Except for setting out the general parameters of the doctrine of qualified immunity, the motion to dismiss sets out the argument as to why defendants are entitled to qualified immunity in the above single sentence.

plaintiff's allegations, taken as true, establish the violation

of a constitutional right, and 2) whether the constitutional

right was clearly established at the time of the challenged

conduct."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir.

2009).

The above, single sentence argument fails to refer, let

alone analyze, the clearly established law in the context of the

facts in the amended complaint, including the relevant facts

that reasonably infer Hyde's prior knowledge of numerous inmate

sexual assaults documented in the PREA report.  Construed in

plaintiff's favor, the facts and reasonable inferences from

those facts set out Hyde's intentional indifference of ignoring

his duties to conduct daily security rounds by playing on the

computer at his desk in the face of a known risk of inmate

sexual assaults in the PREA report.  (Docket Entry # 28-1, ¶¶ 4,

32, 33, 34).  Without a more developed argument at least

articulating the clearly established law in light of the new

facts in the amended complaint, such as the PREA report, Hyde is

not entitled to qualified immunity at the motion to dismiss

stage.

In sum, the failure to protect deliberate indifference

section 1983 claim against Hyde in Count One in his individual

capacity is not futile.

D.  Failure to Protect Claim against Corsini and Julius

34

In Count Two of the amended complaint, plaintiff alleges
that Corsini and Julius failed to protect plaintiff from the
sexual assault which amounted to deliberate indifference.
(Docket Entry # 28-1, p. 8).  In particular, plaintiff alleges
that Corsini and Julius should have been on notice of the
substantial risk of sexual assault at the Center and therefore
should have implemented policies to protect inmates from sexual
assault.  (Docket Entry # 28-1, p. 9).  These policies include
installing surveillance cameras inside housing units, placing
intercoms inside housing units and segregating dangerous inmates
from other inmates.  (Docket Entry # 28-1, pp. 9, 10).  Corsini,
Julius and Hyde oppose amendment on the basis that the amendment
is futile.  (Docket Entry # 30).

Applying the previously discussed Farmer test and assuming
the facts alleged as true and construing reasonable inferences
in favor of plaintiff, the amended complaint sets out sufficient
facts to state a claim of deliberate indifference due to a
failure to protect against Corsini and Julius.  Plaintiff has
sufficiently alleged that he was incarcerated under conditions
posing a substantial risk of serious harm in light of the 2009
PREA report, the 41 PREA incidents in 2007 and 2008 and the
failure to segregate dangerous inmates from vulnerable inmates.
(Docket Entry # 28-1, pp. 8-10).  Plaintiff has sufficiently
alleged that Corsini and Julius were aware of facts from which
the inference could be drawn that a substantial risk of serious

harm existed and that Corsini and Julius drew that inference due
to the existence of the aforementioned 2009 PREA report and the
fact that there were 41 PREA incidents in 2007 and 2008.  (Docket
Entry # 28-1, pp. 9, 10).  Plaintiff has also sufficiently
alleged that Corsini and Julius responded unreasonably to this
risk, as the amended complaint alleges that they failed to
implement corrective procedures, some of which are mentioned
above, after they knew or should have known of the substantial
risk of harm at the Center.  (Docket Entry # 28-1, pp. 9, 10).

     Accordingly, the amended complaint adequately sets out a
section 1983 deliberate indifference claim under the Due Process
Clause against Corsini and Julius in their individual capacity
sufficient to withstand a Rule 12(b)(6) motion to dismiss.  For
reasons set out above, Corsini, Julius and Hyde correctly argue
that any official capacity claim for damages against Corsini and
Julius in Count Two is futile.

     In opposing amendment on the basis of futility, Corsini,
Julius and Hyde also include the above noted, brevis qualified
immunity argument.  Here again, they make no attempt to
articulate or analyze the clearly established law in the context
of the new and relevant facts in the amended complaint,
including the facts evidencing Corsini and Julius' prior
knowledge of numerous inmate sexual assaults documented in the
PREA report and the 41 incidents of sexual assault at the Center

in 2007 and 2008.  The argument as presented assumes and requires that the law is clearly established in Corsini and Julius' favor which, for reasons explained above, is not necessarily accurate because the facts set out a deliberate indifference claim against each of them that would withstand a motion to dismiss based on the law in Burrell and Farmer. Without a more developed argument at least articulating the clearly established law applied to the new facts in the amended complaint regarding Corsini and Julius' knowledge of the known, serious risk of sexual assault, neither Corsini nor Julius is entitled to qualified immunity at the motion to dismiss stage.

In sum, the failure to protect deliberate indifference section 1983 claim against Corsini and Julius in Count Two in their individual capacity would survive a Rule 12(b)(6) motion and, accordingly, is not futile.

E.  Negligence Claim against Hyde

In Count Three, plaintiff asserts a claim of negligence against Hyde based on his failure to conduct his daily security rounds which was the proximate cause of the sexual assault on plaintiff.  (Docket Entry # 28-1, p. 12).  Corsini, Julius and Hyde maintain that an inmate-on-inmate assault claim based on negligence is futile because a negligence standard does not give rise to a constitutional Eighth Amendment failure to protect claim.  (Docket Entry # 30).

37

It is well settled that a section 1983 action against a
state official cannot be based on negligence alone.  <u>Davidson v.</u>
<u>Cannon</u>, 474 U.S. 344, 347 (1986); <u>see also</u> <u>Williams v. City of</u>
<u>Boston</u>, 784 F.2d 430, 434 (1st Cir. 1986) (finding that section
1983 claim requires more than mere negligence).  Thus, to the
extent that Count Three sets out a section 1983 claim for
violation of plaintiff's constitutional rights based on
negligence, it is futile.  That said, the contours of the claim
in the Count Three also raise a common law negligence claim.
Corsini, Julius and Hyde do not address the futility of a common
law negligence claim and, accordingly, it remains in the amended
complaint at this juncture.

In conclusion, the motion to amend is well taken with
respect to the individual capacity section 1983 claims in counts
one and two and the common law negligence claim in Count Three.
Because an amended complaint supercedes a prior complaint, the
motion to dismiss the prior complaint (Docket Entry # 26) is
moot.

CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[10] that the motion to dismiss (Docket Entry # 26) be

---

[10]  Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.  <u>See</u> Rule 72(b), Fed.R.Civ.P.  Any

**DENIED** as moot.   The motion to amend (Docket Entry # 28) is

**ALLOWED** except with respect to the section 1983 official

capacity claims in counts one and two against Corsini, Julius

and Hyde.   Absent an objection filed on or before August 25,

2016, the following schedule shall apply to this case:   (1)

close of fact discovery on November 28, 2016; (2) dispositive

motions filed on or before December 28, 2016; and (3) no further

motions to amend.   To date, plaintiff has sought and obtained

two amendments of the original complaint in this 2013 case.


__/s/_Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

party may respond to another party's objections within 14 days
after service of the objections.   Failure to file objections
within the specified time waives the right to appeal the order.